THE STATE v. CARL EGNER, Appellant.—296 S. W. 145.

Division Two, June 23, 1927.

1. **RAPE: Three Elements.** At common law there are three elements which must be present to constitute the crime of rape, namely, carnal knowledge, force, and the commission of the act without the consent or against the will of the woman. And failure to prove any one of these essential elements is fatal to the State's case.

2. ———: **Against Will: Consent: Definition: Resistance.** The phrases "against her will" and "without her consent" mean exactly the same thing in a charge of rape, and both are defined as the manifestation of the utmost reluctance and the greatest resistance on the woman's part.

3. ———: **Non-Consent: Burden.** In a trial of a defendant charged with rape the burden rests upon the State throughout to demonstrate beyond a reasonable doubt that the woman did not consent to the .act of sexual intercourse. Notwithstanding she may have been in a dazed condition resulting from the drinking of home-made beer, if her testimony shows that before the carnal act she was sufficiently cognizant of surrounding facts and circumstances to realize and understand the import of transpiring events, the burden of proving non-consent rests upon the State until the jury are satisfied of defendant's guilt beyond a reasonable doubt.

4. ———: ———: **Denial of Act by Defendant.** Notwithstanding the defendant denies he had sexual intercourse with prosecutrix the burden still rests upon the State to prove the essential element that the carnal act was without her consent or against her will.

5. ———: **Instructions: Omission of Essential Element.** Even though the evidence establishes a submissible case, the defendant is entitled to an instruction presented by him informing the jury that all of the essential elements constituting the crime must be found by them to exist before they' can return a verdict of guilty. And where the instructions given omit the element of non-consent, the defendant is entitled to an instruction presented by him which covers in proper terms all the essential elements of the offense.

6. ———: ———: **Timely Complaint.** Defendant cannot be heard to complain that incorrect instructions offered by him pertaining to a timely complaint by the prosecutrix in the rape case were refused. But in view of the evidence and circumstances of this case correct instructions on the subject would have been appropriate.

---

Corpus Juris-Cyc. References: **Rape,** 33 Cyc., p. 1415, n. 1; p. 1416, n. 5; p. 1453, n. 17; p. 1505, n. 29.

Appeal from Jackson Circuit Court.—*Hon. Charles B. Pence,* Judge.

REVERSED AND REMANDED.

*North T. Gentry,* Attorney-General, and *J. D. Purteet,* Special Assistant Attorney-General, for respondent.

(1) Requested instructions which erroneously declare the law have no place in a criminal trial. The substance of the requested and refused instructions was to the effect that if the jury believed from the evidence that the prosecutrix had an opportunity to make complaint of her ravishment immediately after the alleged rape, and did not avail herself of such opportunity, then such failure should be taken as inconsistent with appellant's guilt and render the charge of rape against him as being improbable. The facts and circumstances of a given case of rape determine the necessity of an instruction on "failure to complain." State v. Wilson, 91 Mo. 410; State v. Witten, 100 Mo. 525; State v. Goodale, 210 Mo. 275. (2) It is not reversible error to refuse instructions, the subject-matter of which has been covered in given instructions. The subject-matter of requested instructions lettered A and B was covered in the court's instructions numbered 1 and 2. State v. Bigley, 247 S. W. 171.

DAVIS, C.—In an information filed in the Circuit Court of Jackson County, defendant, Cecil Cooley and wife were jointly charged with ravishing, on August 14, 1924, Catherine Ottley. Upon a severance being granted to Cecil and Welma Cooley, the case proceeded to trial against defendant, who was convicted and sentenced to the penitentiary for a term of thirty years. An appeal was later taken from the judgment entered thereon.

The evidence on the part of the State justifies the following finding. The prosecutrix, sixteen years of age at the time of the occurrence, lived with her parents, two small brothers and a sister in Kansas City, and was employed at a cloak concern, in charge of return mail, becoming acquainted, by virtue of her employment, with one Lucille Swiggart. The two girls planned an evening's outing at Electric Park, Lucille agreeing to call for Catherine at half past seven, but failing to do, Catherine retired at eight-thirty. Fifteen minutes later Lucille arrived, Catherine arising, dressing and accompanying her to a waiting car, where for the first time she met defendant, one Arthur Muehle and Mr. and Mrs. Cooley. Catherine entered the car and was driven to Ma Ziegler's home-brew resort in the East Bottoms of Kansas City, where all partook of home-made beer, Catherine drinking one pint bottle according to her testimony, but three pint bottles as the others said. On her way to Ma Ziegler's, Catherine sat on Arthur Muehle's lap. She lost recollection of events at Ziegler's shortly after taking the first bottle of beer, becoming dazed, and stating she was unconscious of what transpired until reaching a lonely place beyond Sheffield. She failed to observe habitations in the

vicinity. At this time Lucille was out of the car, a block or less away, nauseated from the beer, vomiting, accompanied by Arthur Muehle, who was holding her head. Mr. and Mrs. Cooley, twenty and nineteen years of age, respectively, occupied the front seat of the car, with defendant and Catherine on the rear seat.

Defendant, at this time was attempting indecent personal liberties, while Catherine was attempting to fight him off. She then stated she fought until she could fight no longer, and that defendant, with the help of Mrs. Cooley, who held her arms, and Mr. Cooley, who held her legs, pulled up her clothes and had sexual intercourse with her, while lying down on the back seat of the car, which was a seven-passenger Packard touring car, according to defendant's evidence. Catherine stated she was screaming as hard as she could and crying, crying all the way home, although she stated immediately thereafter that she fell asleep on the way home. She did not communicate with her parents that night or the next morning, but went to her employment as usual, working the entire day. Lucille failed to go to work that day, for her marriage with defendant took place in Kansas. Seeking Lucille at her home that evening and not finding her there, Catherine related the occurrence to Lucille's sister and brother-in-law, who suggested the summoning of Catherine's father. Consultations resulted in the arrest of defendant, Mr. and Mrs. Cooley and Arthur Muehle, the information as to Muehle being later dismissed.

Arthur Muehle, for the State, corroborated Catherine in much of her story, but stated that he was about a block away during the alleged intercourse, that he failed to hear an outcry emanating from the car, that the prosecutrix said nothing about an assault, that she was not unconscious during the drive, seeming to talk coherently, although the drink had affected her, and that when he returned to the car, "she was sitting there, not doing anything." Lucille's testimony on behalf of defendant was substantially the same.

Dr. Crooks, Catherine's family physician, testified that, upon examination, he found the hymen broken, but stated further that it can be broken in various ways.

The evidence of defendant and Mr. and Mrs. Cooley, in his behalf, unequivocally denied the assault and the rape, as well as the holding of the hands and the legs, although they admitted the visit to Ma Ziegler's, the drinking of the beer, the subsequent drive to the place where the car was parked and the drive home. Such other facts, if any, as we deem pertinent will be found in the questions treated.

Although a number of questions for reversal were originally briefed by defendant, in view of the rehearing granted, our attention is directed to two complaints only, the defense expressly

abandoning all other alleged error. The two complaints relate to instructions.

I.   The first alleged error relates to the refusal of the court to give the instruction reading: ''The court instructs the jury that before defendant can be found guilty of rape upon the prosecuting witness, Catherine Ottley, the jury must believe from the evidence in the cause that defendant assaulted and forcibly had sexual intercourse with her or actually and forcibly penetrated her body with his private parts against her will and consent; and that said Catherine Ottley manifested the utmost reluctance and used the utmost resistance to such sexual intercourse or penetration, if any.''

In 22 Ruling Case Law, paragraph 1, page 1171, it is said that ''rape is the having of unlawful carnal knowledge by a man of a woman, forcibly and against her will, or, according to the definition preferred by some authorities, it is the unlawful carnal knowledge of a female by force and without her consent.'' It is generally held, however, that the phrases ''against her will'' and ''without her consent'' mean exactly the same thing. At common law there are three elements which must be present to constitute the crime, carnal knowledge, force and the commission of the act without the consent or against the will of the woman. The phrases, ''against her will'' and ''without her consent'' are defined as the manifestation of the utmost reluctance and the greatest resistance on the woman's part. [State v. Cunningham, 100 Mo. 382, 12 S. W. 376; State v. Barbour, 234 Mo. 526, 137 S. W. 874; State v. Catron, 317 Mo. 894.]

Inasmuch as an element of rape is the non-consent of the woman, the burden rested on the State throughout to demonstrate beyond a reasonable doubt that the prosecutrix did not consent to the act of intercourse. Notwithstanding the drinking on her part and the dazed condition resulting therefrom, her testimony shows that before the intercourse she was sufficiently cognizant of surrounding facts and circumstances to realize and understand the import of transpiring events. The proof of non-consent therefore rested on the State until the jury were satisfied of guilt beyond a reasonable doubt. Unless the State's evidence tended to establish that the intercourse was against her will, no offense was shown, notwithstanding other elements were present. While concurring in what we have said, the State argues that the proof of non-consent, in the instant case, is unnecessary, because defendant denied intercourse with the prosecutrix. The issue, however, was not limited to intercourse or non-intercourse, but extended to the necessity of establishing by satisfactory proof on the part of the State all the essential elements of the offense, and the want of one of the elements would have been fatal to the State. The defense does not

aver, however, the want of a submissible case, but argues that it was entitled to have presented an instruction informing the jury that one of the elemental constituents of the crime must be found by them to exist before defendant could be convicted. To that we agree. Inasmuch as the purport of the above instruction was not covered by any instruction given to the jury by the court, its refusal constituted prejudicial error.

II. Defendant also charges the trial court with error in refusing three instructions offered by defendant relative to a timely complaint by the prosecutrix. The instructions as drafted were incorrect. It is unnecessary to go further than to say that an instruction, properly written, involving that theory, would have been *apropos.*

The judgment is reversed and the cause remanded. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.